JAMES T. O'HALLORAN, PLAINTIFF, v. VINCENT DeCARLO; AND PETER M. MOCCO, RALPH AFFUSO, ALPHONSE PINTO, WILLIAM V. DUFFY, AS CONSTITUTING THE BOARD OF COMMISSIONERS OF THE TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 18, 1978.

*Mr. Russell V. D'Italia,* Assistant Prosecutor, for plaintiff (*Mr. James T. O'Halloran,* Prosecutor of Hudson County, attorney).

*Mr. Gerald D. Miller* for defendant Vincent DeCarlo (*Messrs. Miller, Hochman, Meyerson and Schaeffer,* attorneys).

*Mr. Ralph R. Feigelson* for defendants Peter M. Mocco, Ralph Affuso, Alphonse Pinto, William V. Duffy, as Constituting the Board of Commissioners of the Township of North Bergen in the County of Hudson.

BILDER, J. S. C. This is an action in lieu of prerogative writ brought by the Hudson County Prosecutor to remove a North Bergen Police Officer from office pursuant to *N. J. S. A.* 2A:135–9—a statute mandating forfeiture of office upon conviction of certain offenses. By order of this court the governing body of North Bergen was added as a party defendant.

On February 8, 1974 Vincent DeCarlo was convicted of conspiring to violate public bidding laws. Although his office was declared forfeit on December 29, 1976, he was reinstated on January 14, 1977 following a determination by the Commissioner of Public Safety of North Bergen that the crime of which plaintiff was convicted is not one of moral turpitude.

*N. J. S. A.* 2A:135–9 provides as follows:

Any person holding an office or position, elective or appointive, under the government of this state or of any agency or political subdivision thereof, who is convicted upon, or pleads guilty, non vult or nolo contendere to, an indictment, accusation or complaint charging him with the commission of a misdemeanor or high misdemeanor touching the administration of his office or position, or which in-

volves moral turpitude, shall forfeit his office or position and cease to hold it from the date of his conviction or entry or plea.

If the conviction of such officer be reversed, he shall be restored to his office or position with all the rights and emoluments thereof from the date of the forfeiture.

I

It is not disputed that the office held by defendant is within the statute, that he was convicted of the first count of Indictment No. 65 of the 1971 term and that the indictment charges him with the commission of a misdemeanor which does *not* touch on the administration of his office. At issue is the question as to whether the offense of which he was charged and found guilty is one involving moral turpitude.

Our courts have not heretofore passed on the precise question as to whether a conspiracy to violate the bidding laws is a crime involving moral turpitude. They have however determined the meaning of "moral turpitude" in the context of other crimes.[1] Thus, guidance in resolving this otherwise unique case is available.

█ It is well settled law that where the intent to defraud is an essential element of a crime, that crime is one of moral turpitude. *Jordan v. DeGeorge*, 341 *U. S.* 223, 227, 71 *S. Ct.*

[1]The following crimes have been found to involve moral turpitude: larceny, *Raphalides v. Civil Service Dep't*, 80 *N. J. Super.* 407 (App. Div. 1963) ; willful evasion of taxes, *Berardi v. Rutter*, 42 *N. J. Super.* 39 (App. Div. 1956), aff'd 23 *N. J.* 485 (1957) ; *DeMoura v. Newark*, 90 *N. J. Super.* 225 (App. Div. 1966) ; extortion and income tax evasion, *Mount v. Trustees of Pub. Emp. Retirem. Syst.*, 133 *N. J. Super.* 72 (App. Div. 1975) ; fixing of parking tickets, *Fromm v. Bd. of Directors of Police, etc., Retirem. Sys.*, 81 *N. J. Super.* 138 (App. Div. 1963) ; possession of goods stolen from interstate shipment, *Weinstein v. Alcoholic Bev. Control Div.*, 70 *N. J. Super.* 164 (App. Div. 1961) ; concealing and withholding stolen property, *Severini v. Alcoholic Bev. Control Div.*, 82 *N. J. Super.* 1 (App. Div. 1964) ; conspiracy to obtain money for a zoning variance, *Galloway v. Clark Tp. Council*, 92 *N. J. Super.* 409 (Law Div. 1966), aff'd 94 *N. J. Super.* 527 (App. Div. 1967).

703, 95 *L. Ed.* 886 (1950); *Berardi v. Rutter,* 42 *N. J. Super.* 39, 48 (App. Div. 1956) aff'd 23 *N. J.* 485 (1957).

The first count of Indictment No. 65 of the 1971 term generally charges that defendant conspired "to pervert the due administration of the laws of the State of New Jersey pertaining to the requirements for public advertisement for bids and public bidding in public contracts" and "to violate the criminal laws of the State of New Jersey pertaining to the misconduct in office of public officials."

It is not necessary to determine the existence of moral turpitude from the substantive offense, the conspiracy itself denotes moral turpitude—*i.e.,* the fact of the conspiracy, the agreement to violate the bidding laws, connotes moral turpitude. This "partnership in criminal purposes"[2] to violate the public bidding laws is in itself a fraud upon the State. The public's right to the benefits of public advertising and bidding were defeated, other contractors were cheated of their right to equal bidding opportunity, and the public was cheated of its right to have public officials conduct its affairs with propriety and in accordance with law. See *Fromm v. Bd. of Directors of Police, etc., Retirem. Sys.,* 81 *N. J. Super.* 138, 143 (App. Div. 1963).[3] "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it

[2] *U. S. v. Kissel,* 218 *U. S.* 601, 608, 31 *S. Ct.* 124, 54 *L. Ed.* 1168 (1910).

[3] In affirming a finding that alterations of public records was moral turpitude for the purposes of the police pension laws, the court said:
"We need not pass on the question of whether an intent to defraud is requisite to a violation of *N. J. S.* 2A:136–1 [the statute proscribing alterations of public records]. Suffice for the purpose that under the facts of this case the *result of altering* and downgrading traffic tickets *was to defraud the State.* Even-handed justice for all traffic violators was defeated and the enforcement of our motor vehicle laws undermined." [at 145; emphasis supplied]

seeks to accomplish." *Dennis v. U. S.,* 341 *U. S.* 494, 573, 71 *S. Ct.* 857, 898, 95 *L. Ed.* 1137 (1950).

Thus, the offense for which defendant was found guilty is one involving moral turpitude within the meaning of *N. J. S. A.* 2A:135–9 and requires forfeiture of office.

## II

It is the contention of defendant that even if his conviction required forfeiture by virtue of *N. J. S. A.* 2A:135–9, the relief herein sought is barred by a number of procedural barriers: the requirement for an administrative hearing, exhaustion of remedies, lack of timeliness under *R.* 4:69–6, lack of standing, absence of necessary parties, laches, *res adjudicata* and collateral estoppel.

To put these contentions in context, it must be noted that we are dealing here with the right to be a police officer of a man who entered into an agreement with public officials to act with them in violation of the laws of this State. He thereby was not only guilty in participating in the violation of those laws but in aiding to bring about their misconduct in office.

By enactment of *N. J. S. A.* 2A:135–9 the Legislature has enunciated a strong public policy against the holding of public office upon certain criminal conviction. The importance of this public policy is underscored by the fact the forfeiture is immediate and automatic. It is not abated or stayed pending appeal. The job is forfeit upon conviction. In the event of a reversal, the office is restored with back pay. See discussion, *Hays v. Hudson Cty. Bd. of Freeholders,* 116 *N. J. Super.* 21, 25–26 (App. Div. 1971). See also, *Newark v. Civil Service Dep't,* 68 *N. J. Super.* 416, 423 (App. Div. 1961).

This public policy becomes peculiarly relevant when applied to a police officer. As the guardian of our laws he more than anyone must uphold and respect those laws. "A police officer occupies a unique position in our society. * * * [H]e

stands in the public eyes as an upholder of that which is morally and legally correct." *Fromm, supra,* 81 *N. J. Super.* at 143.

The right which is being vindicated in this action is a public right. The prosecutor seeks to enforce an important state policy.

In this setting it is clear that the procedural barriers erected by defendant must fail. They cannot act as a shield to permit his continuance as a police officer in contravention of *N. J. S. A.* 2A:135-9.

■■ With respect to the administrative procedural barriers, defendant misconceives the nature of this proceeding. As already noted, *N. J. S. A.* 2A:135-9 mandates automatic forfeiture. The procedural setting is significantly different from that in which the removal is discretionary or the statute provides for a Civil Service hearing. *Cf. Newark v. Civil Service Dep't,* 68 *N. J. Super.* 416 (App. Div. 1961). Nor is this a review of an administrative action. When defendant was found guilty, his office as police officer ceased. Since that date he has held that position illegally.[4]

■ With respect to *res adjudicata* and collateral estoppel, plaintiff was not a party to that earlier departmental hearing and, in any event, the determination of the police commissioner is at best a determination of law by an administrative official and as such is not entitled to the application

---

[4]It should be noted that even if this were a proceeding to review an administrative action, these procedural defenses would not defeat the public's right to have *N. J. S. A.* 2A:135-9 enforced. Exhaustion of remedies is not required in a case such as this where the question is solely one of law. *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952); *Durgin v. Brown,* 37 *N. J.* 189 (1962). Nor is it required where the public interest demands a speedy solution. *Waldor v. Unterman,* 10 *N. J. Super.* 188 (App. Div. 1950); *Durgin v. Brown, supra.* Similarly, the time limits of *R.* 4:69-6 yield to important public rights. See *Brunetti v. Borough of New Milford,* 68 *N. J.* 576, 588 (1975); *Pressler, Current N. J. Court Rules,* Comment to *R.* 4:69-6 at 803.

of these doctrines. See *U. S. v. Utah Construction Co.*, 384 *U. S.* 394, 421–422, 86 *S. Ct.* 1545, 16 *L. Ed.* 2d 642 (1966) ; *Russell v. Tenafly Bd. of Adj.*, 31 *N. J.* 58, 65 (1959).[5]

■ With respect to laches, it need only be noted that apart from the fact that there is no prejudice in the delay, this equitable principle cannot act as a shield to removal from an office which is being held contrary to law.

■ With respect to the plaintiff's standing to bring suit, suffice it to say that in the absence of appropriate action of others[6] the prosecutor, as the chief law enforcement officer of the county (*N. J. S. A.* 2A:158–5), has an obligation to see that the laws of the State are followed and that the illegal holding of this office is terminated.

Judgment is granted to plaintiff. The office held by defendant DeCarlo as a North Bergen police officer is declared forfeit. Defendant DeCarlo shall immediately cease to hold such office and North Bergen shall forthwith carry out all administrative acts necessary and proper to the effectuation of this ruling. An order shall be submitted, but the forfeiture and the order that defendant DeCarlo cease holding office as North Bergen Policeman shall be effective immediately.

---

[5] Of course, if this were a proceeding to review an administrative action, *res adjudicata* and collateral estoppel would be inapplicable.

[6] While not material to this decision, it is interesting to note that this matter was brought to the prosecutor's attention by the Attorney General with the suggestion that an action for removal from office be instituted.